THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. SAMUEL REITER and Another, Defendants.*

Supreme Court, Kings County, August 20, 1925.

Crimes — grand larceny — certificate of reasonable doubt — defendants were convicted under indictment charging that they obtained check for $25,000 by false representation — indictment sufficient — defendants' guilt established beyond reasonable doubt — instructions — charge to jury not improper under all circumstances — testimony of accomplice sufficient though not corroborated in all particulars.

Defendants who were convicted of the crime of grand larceny under an indictment that they, in conjunction with others, conspired to defraud and obtained a loan of $25,000 from the Brooklyn Trust Company by false representations giving as security certain warehouse receipts which defendants represented to be valid and which they knew were not so, and which, in fact did not represent any goods, are not entitled to a certificate of reasonable doubt pending appeal, on the ground that the indictment does not state to whom the loan was to be made or who owned the property, since the indictment, after specifically reciting that the defendants obtained the check from the bank and that it was "property owned by it" alleges that the representations were made for the purpose of inducing the trust company "to accept said receipts as security for a loan of $25,000" and that the trust company delivered the check to the defendants' corporation in reliance upon these representations.

Defendants' claim that their guilt was not established beyond a reasonable doubt must be dismissed.

The charge of the court to the jury covered the case very fully and in the absence of anything in the record to show that the defendants were not satisfied with it, defendants' application for a certificate of reasonable doubt cannot be entertained.

* See, also, 221 App. Div. 751.

Moreover, the fact that the testimony of the accomplice was not corroborated does not warrant the granting of the certificate, since a corroboration of an accomplice does not have to consist of proof sufficient to establish the guilt of the accused; it is sufficient if the corroboration "tends to connect the defendant with the commission of the crime." (Code Crim. Proc. § 399.)

APPLICATION for certificate of reasonable doubt pending appeal to Appellate Division.

*James I. Cuff,* Assistant District Attorney [*Charles J. Dodd,* District Attorney, with him on the brief], for the People.

*George Gordon Battle,* for the defendants.

CROPSEY, J. The defendants stand convicted of grand larceny. They apply for certificate of reasonable doubt, pending their appeal to the Appellate Division. While many errors are claimed to exist, according to the motion papers, defendants' brief is confined to but a few of them, and those are the only ones that will be now considered.

The charge is that these defendants obtained a check for $25,000 from the Brooklyn Trust Company by false representations. The specific charge is that they, in conjunction with others, conspired to defraud and get the loan from the trust company, giving as security certain warehouse receipts, which they represented to be valid, and which they knew were not so, and which in fact did not represent any goods. Defendants contend the first count in the indictment, which charges the larceny by misrepresentations, is bad, as it does not state to whom the loan was to be made, nor who owns the property the subject of the larceny. These claims are worse than trivial. This count states that the defendants obtained from the Brooklyn Trust Company the check for $25,000, and that it was "property owned by it." It is also alleged that the representations were made for the purpose of inducing that trust company "to accept said receipts as security for a loan of $25,000," and that the trust company delivered the check to the Federal Food Stores in reliance upon the representations.

The next point is that the defendants' guilt was not established beyond a reasonable doubt. Every word of the record has been read, and so far as it seems possible to reflect anything in type the guilt of these defendants has been convincingly demonstrated. Their counsel urges that the proof shows that they had nothing to do with the transaction in question. As to that particular transaction the statement is correct, except that they did sign the collateral note and indorse the certificates that were pledged as collateral. But the record shows many more such transactions, similar in a general way, in which many hundred thousands of dollars were

borrowed upon certificates which were spurious, in the sense that they represented no property, and which were in the main indorsed by these defendants and the loans secured upon notes signed for the most part by them. The certificates were genuine in the sense that they were signed by the warehouse, but they were not genuine in the commercial sense, because they did not represent any goods. The practice that was followed was to issue a number of receipts, practically alike, for one lot of goods. There were dozens of such duplications established, and from two to six copies of the same receipt were shown to have been given as collateral for loans obtained. One of these defendants was the treasurer of the Federal Food Stores, and the other was its vice-president. With another brother they seem to have been the only really active officers of the concern. Its president, Mr. Weinberg, had other employment, and was at the company's offices only a short time in the latter part of the day. He had nothing to do with any of these dishonest transactions, and signed none of the notes or certificates that were used in them.

According to the proof the defendants' brother was in the business place only a short while in the morning and late in the afternoon. If that be true, then the business must have been managed in the main by these two defendants. It is conceded they were at the business place practically all the time directing its affairs. The proof shows that one or both of the defendants negotiated for certain loans, or their renewal, discussed the value of the collateral, had charge of and knew about the goods that were purchased, and knew that the total sales of the company each week amounted to about $75,000. Knowing the sales and the purchases, it is incredible that they did not know that warehouse receipts were being issued for goods that were not on hand. There are other things in the proof which also tend to show defendants' guilt, such as "kiting" checks, both of the company, signed by them, and on their own personal accounts, these transactions usually amounting to $100,000 or more each day, and put through, in part, by the use of checks signed in blank by these defendants.

Defendants' counsel upon the trial, as in his brief here, refers to these defendants as boys, says they are lacking in intelligence, and are not even to be rated as good clerks. I think there can be no difference of opinion as to the latter statement, namely, that they are not to be rated as good clerks, for their conduct shows them to be anything but good. The record, however, does not present them as being boys, but, on the contrary, shows them to be men of many years' experience in business, one of them having been twelve years in the same business and the other about eighteen years. They

Supreme Court, August, 1925.                    [Vol. 130

were shown to be active executives in most of the company's business, and evidently were capable and proficient, save in one respect, and that is in not telling the truth. A reading of the testimony given by each convincingly demonstrates that they are untruthful, and would testify to anything to gain their purpose. It is not surprising that a juror asked one of them if he appreciated the sacredness of an oath. They also denied having taken part in the various matters in which the witnesses for the People said they had participated, evidently in their desire to convince the jury that they had never done anything with reference to these dishonest transactions. These denials, having been found by the jury to be untruthful, would in themselves be evidence of defendants' guilt. No purpose would be served by setting forth in greater detail parts of the record which established defendants' guilt.

Three errors in the charge are asserted: (1) That the court's reference to counterfeit money was improper. This reference was made by way of illustration; the court so stated. It was made at the time the court was charging on the question of guilty knowledge, criminal intent. I can find no error in it whatsoever. When exception was taken to it, the court repeated that it was merely to illustrate how the rule was to be applied, and said: " I don't mean that you should draw from my remarks any inference of guilt in this case."

(2) That the charge made at the request of the district attorney regarding the effect of transferring a warehouse receipt was error. The district attorney requested a charge that a person who for value negotiated a warehouse receipt for indorsement or delivery " represents, first, that the receipt is genuine; second, that he has a legal right to negotiate or transfer it; and, third, that he has knowledge of no fact which would impair the value or worth of the receipt."

This is practically the language of section 128 of the General Business Law, if the word " value " be changed to " validity." That this is the provision of the General Business Law is unquestioned, but defendants' counsel contends it has no place in a criminal trial. The uncontradicted testimony shows that, when the loan in question was made, the certificates were produced and represented to be genuine, that the food company had the right to transfer them, and that they were valid in all respects.

Defendants' counsel reiterates many times in his brief that the receipts were genuine, and, if they had been, unquestionably they were the property of the food company, and the defendants had the right to transfer them. If the defendants had no knowledge of any fact which impaired their validity or worth, of course they would not be guilty. It seems to follow that the charge made was in no

way prejudicial to the defendants. This request in no way affects the guilt of these defendants, since the court had previously told the jury it depended upon whether the certificates in question were duplicates, and hence represented nothing, and whether the defendants were parties to the conspiracy by which the fraud was carried through.

(3) That issues were not fairly presented in the charge, especially as to a specific intent being necessary to be shown. The charge seems to cover the case very fully. As to this point I find nothing in the record to show that the defendants were not satisfied with it. If in fact the charge in this respect was satisfactory to defendants' counsel it seems to me to be a wholly unwarranted thing for an appellate court to reverse, even if they thought the charge was erroneous. Following that practice, of course, a defendant can never lose. If he believes that a charge is improper, but does not take exception, and thus give the court a chance to modify or withdraw it, and the jury acquits, of course his client goes free; but if the jury convicts, then on appeal he also goes free because of the charge. Such a practice seems to me to be demoralizing and does not protect the interests of the people.

Of course, I realize that appellate courts have reversed convictions for alleged errors in the charge, although no exceptions were taken to it, and although defendant's counsel had expressly stated during the trial that he believed the law to be just what the court subsequently charged it; but, if such a practice is to prevail, then there need be no wonder that the disregard for law and order continues to be so general. " Proof of other transactions was improper." This is the defendant's claim, but it is not supported by the authorities. There seems to be no question that in a case such as this proof of similar transactions is admissible. (*People* v. *Katz,* 209 N. Y. 311.)

The remaining point is that the testimony of Ficke, the warehouseman, was not corroborated. This claim does not seem to have been made upon the trial, at least not specifically; but, if it had been, it should not have prevailed. Of course the corroboration of an accomplice — and Ficke was that — does not have to consist of proof sufficient to establish the guilt of the accused. It is sufficient if the corroboration " tends to connect the defendant with the commission of the crime." (Code Crim. Proc. § 399.) There is ample such proof in this record, some of which has already been pointed out. Even the false statements made by the defendants might in themselves be sufficient. There is, however, much in addition.

Finding no reason to believe that the convictions will be reversed, the motion is denied.